## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JONATHAN JOHNSON**                                    **CIVIL ACTION**

**versus**                                                        **NO. 05-1943**

**BURL CAIN, WARDEN**                              **SECTION: "K" (1)**

## REPORT AND RECOMMENDATION

　　　　　This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Jonathan Johnson, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On December 18, 2002, he was convicted of armed robbery in violation of La.Rev.Stat.Ann § 14:64.[2]  He was subsequently found to be a third offender,[3] and, on February 25, 2003, he was sentenced as such to a term of sixty-six years imprisonment, without benefit of parole, probation, or suspension of sentence, with credit for time served.[4]  On October 28, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[5]  He then filed with the Louisiana Supreme Court a petition for a writ of certiorari[6] which was denied on March 19, 2004.[7]

On April 8, 2004, petitioner filed with the state district court an application for post-conviction relief.[8]  That application was denied on April 16, 2004.[9]  He next filed with the Louisiana

---

[2]  State Rec., Vol. II of X, transcript of December 18, 2002, p. 198; State Rec., Vol. I of X, minute entry dated December 18, 2002; State Rec., Vol. I of X, jury verdict form.

[3]  State Rec., Vol. II of X, transcript of February 19, 2003, p. 13; State Rec., Vol. IV of X, minute entry dated February 19, 2003.

[4]  State Rec., Vol. II of X, transcript of February 25, 2003, p. 3; State Rec., Vol. I of X, minute entry dated February 25, 2003.

[5]  State v. Johnson, 860 So.2d 180 (La. App. 5th Cir. 2003) (No. 03-KA-620); State Rec., Vol. V of X.

[6]  State Rec., Vol. X of X.

[7]  State v. Johnson, 869 So.2d 849 (La. 2004) (No. 2003-KO-3171); State Rec., Vol. V of X.

[8]  State Rec., Vol. IV of X.

[9]  State Rec., Vol. IV of X, Order dated April 16, 2004.

Fifth Circuit Court of Appeal an application for a supervisory writ of review[10] which was denied on

May 18, 2004.[11]  He then filed with the Louisiana Supreme Court a petition for a writ of certiorari[12]

which was denied on April 29, 2005.[13]

On August 9, 2004, petitioner filed with the state district court a petition for a writ

of habeas corpus.[14]  That application was denied on October 12, 2004.[15]  On November 15, 2004,

he filed a motion for reconsideration[16] which was denied on December 3, 2004.[17]

On August 16, 2004, petitioner filed with the state district court a second application

for post-conviction relief.[18]  That application was denied on August 23, 2004.[19]  He next filed with

the Louisiana Fifth Circuit Court of Appeal an application for a supervisory writ which was denied

---

[10]  State Rec., Vol. V of X.

[11]  State ex rel. Johnson v. State, No. 04-KH-548 (La. App. 5th Cir. May 18, 2004) (unpublished);
State Rec., Vol. IV of X.

[12]  State Rec., Vol. X of X.

[13]  State ex rel. Johnson v. State, 901 So.2d 1051 (La. 2005) (No. 2004-KH-1613); State Rec.,
Vol. X of X.

[14]  State Rec., Vol. VII of X.

[15]  State Rec., Vol. VII of X, Order dated October 12, 2004.

[16]  State Rec., Vol. IX of X.

[17]  State Rec., Vol. VIII of X, Order dated December 3, 2004.

[18]  State Rec., Vol. VI of X.

[19]  State Rec., Vol. VI of X, Order dated August 23, 2004.

on September 24, 2004.[20]  He then filed with the Louisiana Supreme Court an application for a supervisory and/or remedial writs which was denied on August 19, 2005.[21]

On May 18, 2005, petitioner filed this application for *habeas corpus* relief.  In support of his application, petitioner claims:

1.  The trial court erred in denying petitioner's motion for a mistrial;

2.  Petitioner received ineffective assistance of counsel; and

3.  There was no probable cause for petitioner's arrest.

The state concedes that petitioner's federal application is timely filed and that he exhausted his state court remedies.[22]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under

---

[20]  <u>Johnson v. Cain,</u> No. 04-KH-1117 (La. App. 5th Cir. Sept. 24, 2004) (unpublished); State Rec., Vol. IX of X.

[21]  <u>State *ex rel.* Johnson v. State</u>, 908 So.2d 671 (La. 2005) (No. 2004-KH-2789).

[22]  Rec. Doc. 10, pp. 4-5.  At one point, petitioner had asked that these proceedings be stayed, Rec. Doc. 19; however, he subsequently withdrew that request.  Rec. Doc. 20.

§ 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

On May 6, 2002, at approximately 9:00 a.m., two black men wearing bandanas over their faces entered the Eureka Homestead on Veterans Boulevard in Metairie, Louisiana. One of the men leaped over the counter and placed a gun to the head of a teller, Deanna Barrileaux (Barrileaux), and demanded money. She handed the man approximately $600, all of the cash in her drawer. The other man entered the office of Margo McKee (McKee) where she and another teller, Monica Campos (Campos), were working on the computer. McKee testified that the man pointed a gun at her and told her to put her hands where he could see them. The man further instructed her not to push any buttons, or he would kill her. McKee told the man that there was no money in the office and yelled to Barrileaux to give the men whatever they wanted. Campos testified that she did not recall seeing a gun in the hand of the man in the office, but she assumed that he had one since he threatened her and McKee. A short while later, one of the men yelled, "Let's go," and the two fled on a red motorcycle.

That morning, Detective Sergeant Rotherham of the Jefferson Parish Sheriff's Office (JPSO) was driving his unmarked police car east on I-10 on his way to a funeral. He had just passed the Bonnabel Boulevard exit when he saw a small red motorcycle squeeze between his car and the car to his right. This caught his attention and he noticed that the motorcycle was occupied by two black men wearing dark clothing with bags slung over their shoulders. Detective Rotherham further observed that the passenger was wearing a bandana around his neck. All of these circumstances aroused Detective Rotherham's suspicions and, at approximately 9:15 a.m., he turned on his police radio. Shortly thereafter, Detective Rotherham heard that Eureka Homestead had been robbed and that two black men had fled on a red motorcycle toward the interstate. Detective Rotherham radioed headquarters that he had spotted two men on a red motorcycle and requested assistance from the New Orleans Police Department (NOPD) to intercept the motorcycle. Detective Rotherham continued to follow the men into New Orleans, trying not to alert them. When they exited the interstate at Carrollton Avenue, they sped up and he thought they had noticed his pursuit. He then activated his lights and siren. The pursuit continued until the motorcycle reached the intersection of South Dupre Street and Earhart Boulevard where either intentionally or accidentally, the bike fell over. Both men immediately fled, climbing over a nearby fence with barbed wire at the top that was overgrown with vines. Detective Rotherham was able to follow the men along the fence line in his car.

The Detective kept both men in sight and at one point came face to face with them through the fence. He identified himself and told them to freeze, but they turned around and started running away from him. Detective Rotherham was able to continue to follow the men driving along the fence line. He only lost sight of them once for a few seconds. They eventually went in different directions, but Detective Rotherham saw the Defendant go into an area of apartments with overgrown weeds and broken concrete. The area provided cover for the fugitives and the Detective kept watch on the area while he waited for the NOPD officers and JPSO deputies to arrive. The other officers arrived shortly, surrounding the block, and a canine unit was brought in to search. The police dog discovered the Defendant, whom Detective Rotherham later identified as the driver of the motorcycle, at the top of a staircase at 4108 Clio Street. The Defendant surrendered when the Orleans Parish canine officer said he was releasing the dog. The other man, whom Detective Rotherham later identified as the passenger, emerged from his hiding place under some stairs at a warehouse when a Jefferson Parish helicopter hovered over the area.

During the chase, the men discarded the bags that they were carrying. The police found the bags, but they were empty. The police did not find any guns or money during the search of the area.

When apprehended, the Defendant was wearing a T-shirt and grey shorts. However, Detective Rotherham testified that he found a pair of blue jeans in an alley near the location where the Defendant had been hiding. According to Detective Rotherham, the Defendant was wearing these jeans, a button-down black and white shirt and black shoes during the pursuit.

Although none of the Eureka Homestead witnesses could identify either of the robbers because their faces were covered, Barrileaux and McKee positively identified photographs of the red motorcycle as the get-away motorcycle. Barrileaux identified the tennis shoes worn by the robber who leapt the counter. At trial, it was stipulated that a shoe print expert would have testified that the shoe prints left on the counter was similar to the prints made by the shoes offered by the State. Bonnie Dubourg, a DNA expert, testified that she had compared the Defendant's DNA and DNA obtained from the jeans and linked the jeans to the Defendant.

Chambliss pled guilty before the Defendant's trial and testified for the State that he went into the office at the bank, while the Defendant hopped the counter and robbed Barrileaux at gunpoint. He also claimed that he had no weapon and that the Defendant's gun

was a B.B. gun that resembled a .45 caliber weapon. Chambliss admitted that he made a statement to the police that the Defendant had committed the armed robbery, Chambliss also acknowledged that he had signed a hand-written affidavit rescinding the statement. However, Chambliss stated that he could not read and denied knowledge of the affidavit's contents. Further, Chambliss testified that he had pled guilty and had received a sentence of ten years imprisonment at hard labor without benefits. Chambliss acknowledged that part of his plea agreement was that he would receive a ten-year sentence if he cooperated with the State and a 12 1/2 year-sentence if he did not.

The Defendant presented the testimony of three JPSO deputies who were at the scene during the search for the two men. Officer Gerald Pampin testified that he assisted the NOPD in setting up a perimeter. Crime Scene Technician Kevin Murphy testified that he secured the scene surrounding the fallen motorcycle. Detective John Carroll testified that when the dog discovered the Defendant's scent, it went up the stairs where the Defendant was hiding and retrieved the jeans. Detective Carroll also stated that the Defendant surrendered and came down the stairs when the canine officer said he was sending up the dog. Detective Carroll also stated that Chambliss made a statement later that day in which he said that he was with a person named "Jonathan Evans" during the robbery, that Evans robbed the bank armed with a pellet gun that looked like a .45 caliber weapon, and that he, Chambliss, was unarmed when he went into the office where the two women were located. At trial, Chambliss acknowledged that he told the police that the Defendant's last name was Evans, but he testified that the Defendant was the person that he was with on the day of the robbery.[23]

### Denial of Mistrial

Petitioner claims that the trial court erred in denying the defense's motion for a mistrial based on the unavailability of witnesses. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

---

[23]   State v. Johnson, 860 So.2d 180, 183-85 (La. App. 5th Cir. 2003) (No. 03-KA-620); State Rec., Vol. V of X.

The Defendant contends that the trial judge improperly denied his motion for a mistrial based on the absence of Officers Keith Lacasio and Mike Ocman, who were subpoenaed, but failed to appear for trial.  The State responds that a mistrial is not the proper remedy for an absent witness.  Rather, the State points out that the proper remedy is a motion for a recess, which the Defendant did not make. Additionally, even if he had made such a motion, the Defendant would not have been entitled to it.

The record reflects that the Defendant intended to call Officers Lacasio and Ocman after the testimony of the other three JPSO employees.  After it was determined that Officers Lacasio and Ocman had been subpoenaed but failed to appear, the trial judge issued an attachment for both officers.  The Defendant made a motion for a mistrial based on his argument that the two officers' testimony was important to establish the events leading up to the Defendant's apprehension.  Specifically, he asserted that the testimony elicited from the officers who had just testified was "helpful to the Defense [sic]," but that he did not "know what those two missing officers are going to say."  The trial judge denied the mistrial motion.

The Defendant recognizes that a witness's absence is not listed in La.C.Cr.P. art. 775, but asserts that a witness's absence nonetheless is within the purview of paragraphs 3 and 5 of La.C.Cr.P. art. 775(3) and (5).  He also cites La.C.Cr.P. art. 709, which sets out the criteria for a recess.

La.C.Cr.P. art. 775 provides for a mistrial as follows:

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
>
> > (1) The defendant consents thereto;
> > (2) The jury is unable to agree upon a verdict;
> > (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
> > (4) The court finds that the defendant does not have the mental capacity to proceed;
> > (5) It is physically impossible to proceed with the trial in conformity with law; or

- 9 -

(6) False statements of a juror on voir
dire prevent a fair trial.

Upon motion of a defendant, a mistrial shall
be ordered, and in a jury case the jury dismissed,
when prejudicial conduct in or outside the courtroom
makes it impossible for the defendant to obtain a fair
trial, or when authorized by Article 770 or 771.

A mistrial shall be ordered, and in a jury case
the jury dismissed, when the state and the defendant
jointly move for a mistrial.

A mistrial is a drastic remedy and, except in instances that a
mistrial is mandatory, is warranted only when the defendant suffers
substantial prejudice that deprived him of any reasonable expectation
of a fair trial.  State v. Harris, 00-3459, p. 9 (La. 2/26/02), 812 So.2d
612, 617.

In State v. Bryant, 33,078, p. 6 (La.App. 2nd Cir. 3/1/00), 754
So.2d 387, 391, the court rejected the defendant's argument that the
trial court should have granted his mistrial motion based on the
absence of a witness.  The court found that the defendant failed to
show that there was any ground for a mistrial, noting that the absence
of a witness is not one of the grounds for a mistrial listed in Article
775.  The court further found that a recess was not warranted because
the defendant failed to show that the witness would ever be found and
thus no recess would aid the defense.

We agree with Bryant to the extent that the mistrial statute
does not apply to a missing witness under the particular facts of this
case.  The Defendant was unable to state specifically what the
witnesses would testify that would assist the defense.  Thus, the
Defendant failed to show either "a legal defect in the proceedings
which would make any judgment entered upon a verdict reversible as
a matter of law ...," or that, absent some specific reason for calling
the officers, that it was "physically impossible to proceed with the
trial in conformity with law ..."  C.Cr.P. arts. 775(3) and 775(5).

La.C.Cr.P. art. 709 requires the trial judge to grant a
continuance or recess [FN3] when:

(1) Facts to which the absent witness is expected to
testify, showing the materiality of the testimony and
the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability

that the witness will be available at the time to which the trial is deferred; and

(3) Facts showing due diligence used in an effort to procure attendance of the witness.

[FN3]. Even though Article 709 refers to a *continuance* based on the absence of a witness, the same criteria apply for obtaining a recess. See, State v. Hampton, 98-0331 (La. 4/23/99), 750 So.2d 867, 877, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999).

While Defendant met the due diligence requirement of paragraph three, he failed to meet the first requirement. To the contrary, the Defendant specifically asserted that he did not know what the officers would say. Further, he did not establish that it was probable that the officers would be available in the future. In State v. Stevenson, 02-0079, pp. 4-5 (La.App. 5th Cir. 4/30/02), 817 So.2d 343, 346, this Court found no abuse of the trial court's discretion in denying a defendant's motion for a continuance on the basis of absent witnesses when the defendant failed to meet two of the three requirements of La.C.Cr.P. art. 709. Here, the Defendant failed to meet the statutory requirements for a recess and thus, would not have been entitled to one had he filed a motion for one.[24]

To the extent that petitioner is arguing that the state court erred in applying the state laws concerning the granting of a mistrial or a recess, such claims are not cognizable in a federal *habeas corpus* proceeding. "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'" Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Moreover, even if the state courts in fact misapplied state law, that would be of no moment in this proceeding. Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States;

---

[24]   State v. Johnson, 860 So.2d at 185-87; State Rec., Vol. V of X.

mere violations of state law will not suffice.  28 U.S.C. § 2254; <u>Engle v. Issac</u>, 456 U.S. 107, 119 (1983).

   The Court additionally notes that petitioner has not demonstrated that his federal constitutional rights were violated by the trial court's failure to grant a mistrial or declare a recess due to absence of the two witnesses.  It is true that the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor."  U.S. Const. amend. VI.[25]  Nevertheless, the United States Fifth Circuit Court of Appeals has noted:

> The Supreme Court has made clear, however, that in order to establish a violation of the compulsory process right, a petitioner must show more than the mere absence of a defense witness's testimony at trial.  Rather, a petitioner must at least make some plausible showing of how the absent witness's testimony would have been both material and favorable to his defense.

<u>Janecka v. Cockrell</u>, 301 F.3d 316, 326 (5th Cir. 2002) (citations, internal quotation marks, and brackets omitted).

   In the instant case, petitioner has made no such showing.  Petitioner has never established to either the state courts or to this Court what Keith Lacasio and Mike Ocman would have said if they had in fact testified, much less that the testimony would have been favorable to the defense.  Accordingly, he has utterly failed to meet his burden of proof with respect to this claim.

   Moreover, in any event, petitioner's rights were not violated by either the prosecution or the state court; rather, he was granted everything he requested to which he was entitled.  The

---

[25] The Sixth Amendment's right to compulsory process is applicable to the states through the Fourteenth Amendment.  <u>Washington v. Texas</u>, 388 U.S. 14, 18 (1967).

defense asked that the officers be subpoenaed, and they were.  When they failed to appear, the defense asked that attachments be issued, and they were.  When the attachments failed to result in the witnesses' presence, the defense asked for a mistrial; however, he was not entitled to a mistrial under either state or federal law.  The question of whether a recess should have been granted is moot, because no recess was in fact requested.

Lastly, in any event, even if petitioner's Sixth Amendment rights had been violated, which they were not, he still would not be entitled to relief if the error was ultimately harmless. Janecka, 301 F.3d at 327.  In this case, in light of the overwhelming evidence of petitioner's guilt, this Court has no hesitation in finding that any such error would have been harmless.

<u>Ineffective Assistance of Counsel</u>

Petitioner contends that his trial counsel was ineffective.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697.  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Id.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

A claim of ineffective assistance of counsel is a mixed question of law and fact.  Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

- 14 -

Petitioner asserted his ineffective assistance of counsel claims in his first state post-conviction application.  In the last reasoned decision addressing those claims, the state district court denied them, holding:

> [D]efendant alleges ineffective assistance of counsel based on the following: 1) counsel's failure to object to petitioner's alleged illegal arrest; 2) counsel's failure to file a motion to suppress evidence and object based on upon his "illegal" arrest; (3) counsel's failure to file a motion to suppress and for failing to object to the testimony of his co-defendant and; 4) counsel's failure to impeach the credibility of co-defendant.
>
> The Supreme Court of the United States established the standards for the claim of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  The test established by the Supreme Court provides that in order for a claim of ineffective assistance of counsel to prevail, the petitioner must show the counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that the deficient performance prejudiced the defense in that the errors were so serious as to deprive petitioner of a fair trial.
>
> The Louisiana Supreme Court addressed this very issue in State v. Strahan, 325 So.2d 231 (La. 1975).
>
> > "Further, failure of trial counsel to adequately question alibi witnesses, properly investigate the case, make an opening statement, have defendant take the stand, request particular special charges, and object to certain questions asked of witnesses at trial are all claimed to clearly show that defendant was not adequately and effectively represented at the trial. we do not agree.  These charges are either leveled at decisions made by counsel during the heat of trial, the correctness of which cannot be determined by hindsight, or the validity of which is not evident from the record." Id. at 233.
>
> In the instant case, none of defendant's claims seem to go beyond strategic choices made by his counsel at the time of the defendant's trial.  The defendant's claims are essentially with his counsel's decisions regarding objections and motions raised at trial.

> These are considered trial tactics for purposes of evaluating the performance of defendant's counsel. Thus, defendant's claim must fail because his counsel's action at trial was considered trial tactics and under the <u>Strickland</u> test, the defendant has failed to meet the two-prong test.[26]

As noted by the state court, petitioner contends that his trial counsel was ineffective in several respects. The Court will address each of petitioner's contentions.

First, petitioner claims that counsel was ineffective in failing to file a motion to suppress and to object to the testimony of co-defendant Robert Chambliss. This largely nonsensical claim is based on a theory that the trial judge who accepted Chambliss' guilty plea violated laws against public bribery in agreeing to reduce Chambliss' sentence, if the district attorney so requested, based on Chambliss' subsequent cooperation in petitioner's prosecution. However, the laws cited by petitioner have no apparent applicability to this situation, and therefore any challenge to the admissibility of Chambliss' testimony on that basis would have been meritless. Accordingly, counsel cannot be considered ineffective in failing to assert such a challenge. <u>See, e.g.</u>, <u>Sones v. Hargett</u>, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Rather, the correct course of action

---

[26] State Rec., Vol. IV of X, Order dated April 16, 2004. The Louisiana Fifth Circuit Court of Appeal found no error in that ruling. <u>State ex rel. Johnson v. State</u>, No. 04-KH-548 (La. App. 5th Cir. May 18, 2004) (unpublished); State Rec., Vol. IV of X. The Louisiana Supreme Court denied the related writ application without assigning reasons. <u>State ex rel. Johnson v. State</u>, 901 So.2d 1051 (La. 2005) (No. 2004-KH-1613); State Rec., Vol. X of X.

was to attempt to undermine Chambliss' testimony by questioning him about the benefit he received in exchange for his testimony against petitioner.  Counsel did just that at trial.[27]

Second, petitioner claims that counsel was ineffective in failing to object to and to move to impeach the testimony of co-defendant Robert Chambliss on the basis that his testimony was inconsistent with his prior statements and the testimony of the victims and of Detective John Carroll.

To the extent that petitioner is arguing that counsel should have moved to exclude Chambliss' testimony, there was no legal basis for doing so.   Therefore, counsel can hardly be deemed ineffective for failing to make a futile motion.

To the extent that petitioner is arguing that counsel should have challenged Chambliss' testimony or cross-examined him more vigorously, the claim must fail.  "The decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F.Supp.2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005), cert. denied, 125 S.Ct. 1026 (2006).  The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.

Such second-guessing is especially inappropriate in the instant case.  It is evident from the transcript that counsel zealously and effectively cross-examined Chambliss, highlighting

---

[27]  State Rec., Vol. II of X, transcript of December 18, 2002, pp. 118-19, 124-25, and 138.

inconsistencies and ulterior motivations.[28]   Moreover, Chambliss was not a particularly effective witness in any event, and it is unlikely that his credibility on the fine points could have been further undermined by the laborious and nit-picking questioning on minor details that petitioner now suggests.   Rather than risking alienating the jury with a further belabored examination on every inconsistency, counsel obviously chose to focus on the testimony's two weakest points:   that Chambliss had originally identified his co-perpetrator as "Jonathan Evans," rather than Jonathan Johnson,[29] and that Chambliss would receive a shorter sentence if he testified against petitioner.   Such focused cross-examination can hardly be considered an ineffective alternative to scattershot questioning on every inconsistency, especially with respect to a witness of limited abilities.[30]

---

[28]   State Rec., Vol. II of X, transcript of December 18, 2002, pp. 118-51.

[29]   In his discussion of this claim, petitioner also complains that counsel should have investigated the possible involvement of Jonathan Evans and subpoenaed him at trial.   A petitioner asserting a claim for inadequate investigation bears the burden to provide factual support for his allegations as to what further investigation would have revealed. Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998).   Additionally, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).   To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).

   In the instant case, Chambliss testified that he had simply misstated petitioner's name when he initially indicated that his co-perpetrator was Jonathan Evans.   That explanation is not inherently implausible.   Moreover, petitioner offers nothing in support of his implicit contention that further investigation by counsel might have revealed that Jonathan Evans was involved in this crime or that, if called to testify, Evans would have testified at all, much less in a manner that would have been beneficial to the defense.   Accordingly, he has failed to meet his burden of proof to show deficient performance and resulting prejudice.

[30]   In his discussion of this claim, petitioner also opines that counsel should have discovered that Chambliss had been a fugitive with respect to another armed robbery and should have questioned

Third, petitioner claims that counsel was ineffective in failing to file a motion to suppress evidence and to object based on a contention that there was no probable cause for petitioner's warrantless arrest.  Although certain Fourth Amendment violations are themselves not cognizable on federal *habeas* review, see Stone v. Powell, 428 U.S. 465 (1976), counsel's failure to competently litigate such a Fourth Amendment claim may still give rise to a cognizable ineffective assistance claim.  Kimmelman v. Morrison, 477 U.S. 365 (1986).  Nevertheless, such a Sixth Amendment claim requires at its foundation a *meritorious* Fourth Amendment issue.  Id. at 375, 382.  In this case, petitioner's underlying claim has no merit.

---

him about that fact.  However, counsel's failure to do so falls far short of rendering his representation ineffective.  Chambliss was an admitted armed robber, a fact made abundantly clear to the jury, and, therefore, he was hardly held up to be or conceivably perceived as a paragon of virtue.  The fact that he may have been involved in other crimes in the past, or may have been a fugitive, would not have further undermined his already suspect credibility.

Lastly, petitioner also seems to argue that counsel should have sought some type of jury charge with respect to Chambliss' testimony.  It is unclear exactly what charge petitioner believes would have been desirable and appropriate.  Nevertheless, this Court notes that the jurors were instructed as follows:

> In determining the credibility of witnesses, you may take into account his or her manner on the witness stand, the probability or improbability of his or her statement, the interest or want of interest he or she may have in the case, and every fact and circumstance surrounding the giving of his or her testimony which may aid you in weighing his or her statement.
>
> If you believe that any witness in the case, either for the state or defense, has willfully and deliberately testified falsely to any material fact, for the purpose of deceiving you, then I charge you that you are justified in disregarding the entire testimony of such witness as proving nothing and unworthy of belief, or you may believe any portion of that witness's testimony as it impresses you, individually.

State Rec., Vol. IV of X, General Jury Charge.  Those instructions were sufficient to cover any issues the jury may have had with Chambliss' testimony.

"Probable cause for a warrantless arrest exists when the totality of the facts and circumstances within an officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed an offense." United States v. Hebert, 131 F.3d 514, 524 (5th Cir. 1997).  "[P]olice officers may develop probable cause for a warrantless arrest on the basis of information communicated to them by other officers." United States v. Chappell, 6 F.3d 1095, 1100 (5th Cir. 1993).

In the instant case, Detective Sergeant Rotherham, while driving on Interstate 10, observed a red motorcycle occupied by two black men.  The men had bags slung over their shoulders, were wearing dark clothing, and one was wearing a bandana around his neck.  Shortly thereafter, Rotherham heard on his police radio that minutes earlier the Eureka Homestead had been robbed by two black men who fled toward the interstate on a red motorcycle.

Rotherham followed the men on the motorcycle.  When Rotherham activated his lights and siren, the men fled, at first on the motorcycle and then on foot.  The men climbed over a fence with barbed wire at the top as Rotherham continued to follow them along the fence line in his car.  At one point he came face to face with the men through the fence.  He identified himself and told them to freeze, but they turned around and started running away from him.  Rotherham continued to follow them along the fence line.

The men eventually went in different directions, but Rotherham saw petitioner go into an area of apartments.  Other officers arrived, surrounding the block, and a canine unit was brought in to search.  The police dog discovered petitioner, whom Rotherham identified as the driver of the motorcycle, at the top of a staircase.  When apprehended, petitioner was wearing a T-shirt and grey

shorts; however, Rotherham found in a nearby alley the pair of blue jeans petitioner had been wearing during the pursuit.

Petitioner's counsel decided to forego a Fourth Amendment claim, determining that a suppression hearing would be a waste of time.[31]  Based on the foregoing, this Court finds that counsel was correct in that assessment, and that his failure to pursue a facially meritless Fourth Amendment claim did not constitute ineffective assistance of counsel.

In the instant case, the state court correctly identified the appropriate legal standard, i.e. the Strickland standard, in analyzing petitioner's ineffective assistance of counsel claims. Moreover, petitioner has failed to demonstrate that the state court's decision on any of his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Applying the AEDPA's deferential standard, this Court therefore rejects those claims.

<u>Fourth Amendment Claim</u>

Petitioner's final claim is that he was arrested without probable cause.  The state argues that consideration of petitioner's Fourth Amendment claim is barred by Stone v. Powell, 428 U.S. 465 (1976).

In Stone, the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."  Id. at 494 (footnote omitted); see also Janecka v.

---

[31]  State Rec., Vol. I of X, transcript of December 12, 2002, p. 3.

Cockrell, 301 F.3d 316, 320 (5th Cir. 2002).  A full and fair opportunity to litigate a Fourth Amendment claim generally exists where the accused person had the availability of "at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when the facts are in dispute, and full consideration by an appellate court when the facts are not in dispute." Caver v. Alabama, 577 F.2d 1188, 1191 (5th Cir. 1978) (construing O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The "opportunity" for full and fair litigation exists as long as the state provides the petitioner with processes by which he can obtain full and fair consideration, without regard to whether he actually utilizes those processes.  Caver, 577 F.2d at 1192 ("An 'opportunity for full and fair litigation' means just that: an opportunity."); see also Janecka, 301 F.3d at 320.  It is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims.   Absent sufficient factual allegations and proof that the state process is routinely or systematically applied in such a way as to prevent the actual litigation of those claims, the Stone bar applies.  Joshua v. Maggio, 674 F.2d 376, 377 (5th Cir. 1982); Smith v. Maggio, 664 F.2d 109, 111 (5th Cir. 1981).  In the instant case plaintiff does not even allege, much less demonstrate, that Louisiana state courts preclude litigation of such claims such as the one he now raises.  Accordingly, the state is correct that Stone bars consideration of petitioner's Fourth Amendment claim in this federal proceeding.

Moreover, the state alternatively argues that even if Stone did not bar petitioner's claim, the claim would still be procedurally barred in this proceeding.  As has been noted by the United States Fifth Circuit Court of Appeals:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  "When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

Petitioner asserted this claim in his first post-conviction application.  The state district court rejected the claim, holding:

> [D]efendant alleges that the police officer lacked probable cause to arrest him.  Defendant's claim of probable cause could have been [sic] during appeal and thus should be barred under La.C.Cr.P. 930.4.  In any event lack of probable cause for an indictment or following a preliminary hearing is moot after conviction.  State v. Woodberry, 820 So.2d 638, 2002-0994 (La. App. 4th Cir. 6/5/02).   Thus defendant's claim must be denied.[32]

Because the state court invoked a state procedural rule obviously independent of the merits of any federal claim, the would need only to determine whether that rule was "adequate."  "The [procedural bar] doctrine presumes that a state procedural ground is adequate ... and,

---

[32]  State Rec., Vol. IV of X, Order dated April 16, 2004.

ordinarily, the burden is on the habeas petitioner to demonstrate otherwise." Hughes, 191 F.3d at 614. In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule around the time it was applied. Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997). Here, petitioner clearly has not met his burden, in that he makes no attempt whatsoever to establish that the procedural rule was not strictly or regularly followed.

As previously noted, "[w]hen the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes, 191 F.3d at 614. In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). As noted, petitioner claims that his counsel was ineffective in failing to pursue the Fourth Amendment claim. In some instances, ineffective assistance of counsel can constitute cause for a procedural default. See Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). However, as previously noted in this opinion, counsel was not in fact ineffective in failing to pursue the Fourth Amendment claim. Because of that fact, and because petitioner has not otherwise shown cause, he has failed to meet his burden to establish cause and, therefore, "it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

In light of the foregoing, petitioner's claim would be procedurally barred unless the application of the bar would result in a fundamental miscarriage of justice. In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted). Applying that standard, and considering the overwhelming evidence of petitioner's guilt in this case, the Court finds that petitioner could not make a persuasive showing that he is actually innocent of the charges against him. Therefore, he could not demonstrate that any miscarriage of justice would result from application of the procedural bar. Accordingly, the state is correct in arguing that petitioner's claim would also be procedurally barred in this federal proceeding.

Of course, the application of either the Stone bar or the procedural bar is largely moot at this point, in that the Court has already considered, and found wanting, petitioner's Fourth Amendment claim in connection with the related ineffective assistance of counsel claim. Because the claim is ultimately meritless for the reasons previously set forth in this opinion, petitioner would not be entitled to relief even if the bars were inapplicable.

- 25 -

**RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the federal petition for *habeas corpus* relief filed by Jonathan Johnson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twelfth day of June, 2006.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE