**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JONATHON JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 05-1943** |
| **BURL CAIN, WARDEN** | **SECTION: "K"(1)** |

<u>**ORDER AND REASONS**</u>

Before the Court is the Section 2254 Habeas Corpus Petition (Rec.Doc.No. 1) of Jonathan Johnson seeking relief from a sentence imposed by a Louisiana State Court in connection with his conviction for armed robbery in violation of La. Rev. Stat. Ann. § 14:64. After reviewing the pleadings, the state court record, the applicable law, the Report and Recommendation of the Magistrate Judge (Rec.Doc.No. 22), and the Petitioner's Objections to the Magistrate's Report (Rec.Doc.No. 23), the Court hereby dismisses the Section 2254 Petition for the reasons assigned herein.

1

# I. BACKGROUND

Petitioner Jonathan Johnson is incarcerated in state prison in Angola, Louisiana. Petitioner is serving a sixty year sentence for armed robbery, with his sentenced enhanced as a third offender. The Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence on October 28, 2003, and the Louisiana Supreme Court denied subsequently filed writs of certiorari on March 19, 2004.

The Court adopts the facts as presented by the Louisiana Fifth Circuit Court of Appeal. The state court summarized the facts as follows:

> On May 6, 2002, at approximately 9:00 a.m., two black men wearing bandanas over their faces entered the Eureka Homestead on Veterans Boulevard in Metairie, Louisiana. One of the men leaped over the counter and placed a gun to the head of a teller, Deanna Barrileaux (Barrileaux), and demanded money. She handed the man approximately $600, all of the cash in her drawer. The other man entered the office of Margo McKee (McKee) where she and another teller, Monica Campos (Campos), were working on the computer. McKee testified that the man pointed a gun at her and told her to put her hands where he could see them. The man further instructed her not to push any buttons, or he would kill her. McKee told the man that there was no money in the office and yelled to Barrileaux to give the men whatever they wanted. Campos testified that she did not recall seeing a gun in the hand of the man in the office, but she assumed that he had one since he threatened her and McKee. A short while later, one of the men yelled, "Let's go,"and the two fled on a red motorcycle.
>
> That morning, Detective Sergeant Rotherham of the Jefferson Parish Sheriff's Office (JPSO) was driving his unmarked police car east on I-10 on his way to a funeral. He had just passed the Bonnabel Boulevard exit when he saw a small red motorcycle squeeze between his car and the car to his right. This caught his attention and he noticed that the motorcycle was occupied by two black men wearing

dark clothing with bags slung over their shoulders. Detective Rotherham further observed that the passenger was wearing a bandana around his neck. All of these circumstances aroused Detective Rotherham's suspicions and, at approximately 9:15 a.m., he turned on his police radio. Shortly thereafter, Detective Rotherham heard that Eureka Homestead had been robbed and that two black men had fled on a red motorcycle toward the interstate. Detective Rotherham radioed headquarters that he had spotted two men on a red motorcycle and requested assistance from the New Orleans Police Department (NOPD) to intercept the motorcycle. Detective Rotherham continued to follow the men into New Orleans, trying not to alert them. When they exited the interstate at Carrollton Avenue, they sped up and he thought they had noticed his pursuit. He then activated his lights and siren. The pursuit continued until the motorcycle reached the intersection of South Dupre Street and Earhart Boulevard where either intentionally or accidentally, the bike fell over. Both men immediately fled, climbing over a nearby fence with barbed wire at the top that was overgrown with vines. Detective Rotherham was able to follow the men along the fence line in his car. The Detective kept both men in sight and at one point came face to face with them through the fence. He identified himself and told them to freeze, but they turned around and started running away from him. Detective Rotherham was able to continue to follow the men driving along the fence line. He only lost sight of them once for a few seconds. They eventually went in different directions, but Detective Rotherham saw the Defendant go into an area of apartments with overgrown weeds and broken concrete. The area provided cover for the fugitives and the Detective kept watch on the area while he waited for the NOPD officers and JPSO deputies to arrive. The other officers arrived shortly, surrounding the block, and a canine unit was brought in to search. The police dog discovered the Defendant, whom Detective Rotherham later identified as the driver of the motorcycle, at the top of a staircase at 4108 Clio Street. The Defendant surrendered when the Orleans Parish canine officer said he was releasing the dog. The other man, whom Detective Rotherham later identified as the passenger, emerged from his hiding place under some stairs at a warehouse when a Jefferson Parish helicopter hovered over the area.

During the chase, the men discarded the bags that they were carrying. The police found the bags, but they were empty. The police did not find any guns or money during the search of the area.

3

When apprehended, the Defendant was wearing a T-shirt and grey shorts. However, Detective Rotherham testified that he found a pair of blue jeans in an alley near the location where the Defendant had been hiding. According to Detective Rotherham, the Defendant was wearing these jeans, a button-down black and white shirt and black shoes during the pursuit.

Although none of the Eureka Homestead witnesses could identify either of the robbers because their faces were covered, Barrileaux and McKee positively identified photographs of the red motorcycle as the get-away motorcycle. Barrileaux identified the tennis shoes worn by the robber who leapt the counter. At trial, it was stipulated that a shoe print expert would have testified that the shoe prints left on the counter was similar to the prints made by the shoes offered by the State. Bonnie Dubourg, a DNA expert, testified that she had compared the Defendant's DNA and DNA obtained from the jeans and linked the jeans to the Defendant.

Chambliss pled guilty before the Defendant's trial and testified for the State that he went into the office at the bank, while the Defendant hopped the counter and robbed Barrileaux at gunpoint. He also claimed that he had no weapon and that the Defendant's gun was a B.B. gun that resembled a .45 caliber weapon. Chambliss admitted that he made a statement to the police that the Defendant had committed the armed robbery, Chambliss also acknowledged that he had signed a hand-written affidavit rescinding the statement. However, Chambliss stated that he could not read and denied knowledge of the affidavit's contents. Further, Chambliss testified that he had pled guilty and had received a sentence of ten years imprisonment at hard labor without benefits. Chambliss acknowledged that part of his plea agreement was that he would receive a ten-year sentence if he cooperated with the State and a 12 1/2 year-sentence if he did not.

The Defendant presented the testimony of three JPSO deputies who were at the scene during the search for the two men. Officer Gerald Pampin testified that he assisted the NOPD in setting up a perimeter. Crime Scene Technician Kevin Murphy testified that he secured the scene surrounding the fallen motorcycle. Detective John Carroll testified that when the dog discovered the Defendant's scent, it went up the stairs where the Defendant was hiding and retrieved the jeans. Detective Carroll also stated that the Defendant surrendered and came down the stairs when the canine officer said he was sending up the dog. Detective Carroll also stated that Chambliss made a statement later that day in which he said that he was with a person named "Jonathan Evans" during the robbery, that Evans robbed the bank armed with a pellet gun that looked like a .45 caliber

> weapon, and that he, Chambliss, was unarmed when he went into the office where the two women were located. At trial, Chambliss acknowledged that he told the police that the Defendant's last name was Evans, but he testified that the Defendant was the person that he was with on the day of the robbery.

*See* Report & Recommendation ("Report"), at p. 5-8 (Rec.Doc.No. 22).

Having exhausted his state court post-conviction remedies,[1] Petitioner filed this application for habeas relief on May 18, 2005 (Rec.Doc.No. 1), claiming the following:

1.    The trial court erred in denying Petitioner's motion for mistrial;

2.    Petitioner received ineffective assistance of counsel; and

3.    There was no probable cause for petitioner's arrest.

Pursuant to 28 U.S.C. § 636(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, this proceeding was referred to United States Magistrate Judge Sally Shushan for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition. Magistrate Judge Shushan found that the disposition of this matter did not require a hearing, and recommending dismissal of the petition with prejudice. *See* Report, at p. 1 (Rec.Doc.No. 22).

Petitioner timely filed Objections (Rec.Doc.No. 23) to the Report and Recommendations,

---

[1] *See* Report, at p. 2-4 (Rec.Doc.No. 22).

specifically, positing the following contentions:[2]

    1.    The Magistrate Judge erred when she failed to apply all the correct standard of law and constitutions of the United States to Petitioner's claim in which she reached the wrong result.

    2.    The Magistrate Judge failed to review Robert Chambliss' co-defendant guilty plea transcript as a whole and discover prior to the entry of Chambliss' plea of guilty the trial judge participated in a plea negotiation and promise Chambliss something of value for his testimony.

    3.    [T]he Magistrate Judge erred to determine that petitioner's trial counsel was ineffective in his representation during trial when he failed and/or omitted to question Chambliss specifically regarding his pending felony charge in state court and any effect it might have on his motivation to testify in the instant state proceeding against petitioner

*See* Objections to Magistrates Report ("Objections") (Rec.Doc.No. 23).

---

[2] With respect to Petitioner's claim of lack of probable cause, he offers no specific objections to the Magistrate's Report. Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a *de novo* review of those portions of the report and recommendations to which objection is made; however, when the objections raised are identical arguments based on identical case law that Petitioner made in his initial petition, the Court need only review the soundness of the Magistrate's report. Here, Petitioner does not address the reasoning of the Magistrate Judge's Report and Recommendation, rather he simply restates the points made in his initial petition. *See* Objections, at p. 28 (Rec.Doc.No. 23). The Court finds the Magistrate Judge's Report and Recommendation to be comprehensive and correct, and thus, dismisses Petitioner's third claim for habeas corpus relief based on arrest without probable cause. *See Tolliver v. Wilkinson*, 2005 WL 4658520, at p. 1 (E.D. La. Dec. 9, 2005)(court need not conduct *de novo* review of objections which fail to pinpoint those portions of the Magistrate's Report that the district court must specifically consider).

## II. STANDARD OF REVIEW

Magistrate judges are empowered by statute to preside over certain pretrial matters upon appointment by a district judge. 28 U.S.C. § 636(b)(1)(A); *see also* Rules Governing § 2254 Cases, Rule 10. A district court evaluating a magistrate judge's recommendation may adopt those portions of the recommendation to which no specific objection is made, as long as those sections are not clearly erroneous. *See id.;* FED.R.CIV.P. 72(b). However, where a party makes "specific, written objections" within ten days after being served with a copy of the magistrate's recommendations, the district court must undertake *de novo* review of those contested aspects of the report. 28 U.S.C. § 636(b)(1)(c); *see also* FED.R.CIV.P. 72(b). The district judge may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." FED.R.CIV.P. 72(b).

In reviewing Section 2254 petitions, the Court must apply the legal standards as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams*[ *v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

# III. ANALYSIS

## A.    Denial of Mistrial

Petitioner argues that the state trial court unconstitutionally denied his motion for new trial based on the unavailability of witnesses. The Magistrate Judge found that Petitioner's claim is without merit. Specifically, the Magistrate held that 1) such a claim was not cognizable in a federal *habeas corpus* proceeding because it involved a state law determination of a state law question; 2) Petitioner did not meet his burden of showing that the absent witnesses' testimony would have been favorable to the defense; and 3) given the overwhelming evidence of guilt, any putative constitutional violation was harmless.

As set forth in the Magistrate's Report, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI.[3] However, the United States Fifth Circuit Court of Appeals has explained:

> The Supreme Court has made clear, however, that in order to
> establish a violation of the compulsory process right, a petitioner
> must show more than the mere absence of a defense witness's
> testimony at trial. Rather, a petitioner must at least make some
> plausible showing of how the absent witness's testimony would
> have been both material and favorable to his defense.

*Janecka v. Cockrell*, 301 F.3d 316, 326 (5th Cir. 2002).

---

[3] The Sixth Amendment's right to compulsory process is applicable to the states through the Fourteenth Amendment. *Washington v. Texas*, 388 U.S. 14, 18 (1967).

Petitioner does not challenge the denial of a mistrial to the extent that it is state law determination on the state law question, but asserts that the denial of a mistrial ultimately deprived him of his Six Amendment right to compulsory process. Rather than address the Magistrate's findings or otherwise articulate how he has met his burden as explained in *Janecka*, Petitioner submits the following conclusory allegation:

> Petitioner subpoenaed Officers Lacasio and Ocman, police officers who were witnesses and their testimonys' are material in facts surround the scene of apprehension of Petitioner, who was present at the time of the search, and can testify what was taking place at the time. To deprive Petitioner of two categories of defense evidence in the frame work of trial Counsel's trial strategy and trial tactics would defeat ends of Justice, and it had a substantial and injurious effect or influence in determining the jury verdict.

*See* Objections, at p. 18 (Rec.Doc.No. 23).

This contention does not even establish a *prima facie* case for a violation of the Sixth Amendment right to compulsory process as there is no allegation that the witnesses would have testified in Petitioner's favor. Thus, the Court finds that Petitioner's claim that the state court's denial of his motion for mistrial did not violate Petitioner's Sixth Amendment right to compulsory process, and hereby, adopts the Magistrate's recommendation with respect to this claim.

10

**B.** **Ineffective Assistance of Counsel**

The second question before the Court is whether Petitioner received ineffective assistance of counsel such that his Sixth Amendment rights were violated. Ineffective assistance of counsel claims are analyzed under the standard established by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* requires the defendant to show both that: (1) the trial counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Id. See also United States v. Mullins,* 315 F.3d 449, 452 (5th Cir.2002), *Sayre v. Anderson,* 238 F.3d 631, 634 (5th Cir.2001).

To satisfy the first prong of *Strickland,* a petitioner must prove that counsel's conduct fell below an objective standard of reasonableness. 466 U.S. at 687-688. Judicial review is highly deferential. *Id.* A court will judge whether counsel's acts or omissions fall within the range of professionally competent assistance based upon the facts of the particular case. *Id.* at 690. To prove prejudice under the second prong, a petitioner "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reviewing court may start with either component of the *Strickland* analysis, and is not required to reach the remaining question unless it finds that the defendant satisfied the first. *Id.* at 697. However, when the complained-of actions result in the actual or constructive denial of the assistance of counsel altogether, a petitioner need not prove prejudice under *Strickland. Childs v. Collins,* 995 F.2d 67, 68 (5th Cir.) (citing *Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 354, 102 L.Ed.2d 300 (1988), *cert. denied,* 510 U.S. 1016, 114 S.Ct. 613, 126 L.Ed.2d 577 (1993)). "If a

11

petitioner can prove that the ineffective assistance of counsel denied him the right to appeal, then he need not further establish-as a prerequisite to habeas relief-that he had some chance of success on appeal." *United States v. Gipson,* 985 F.2d 212, 215 (5th Cir.1993)

Petitioner claims that his trial counsel was ineffective in that he:

1)    failed to file a motion to suppress and to object to the testimony of co-defendant Robert Chambliss;

2)    failed to object to and to move to impeach the testimony of co-defendant Chambliss on the basis that his testimony was inconsistent with his prior statements and the testimony of the victims and of Detective John Carroll; and

3)    failing to file a motion to suppress evidence and to object based on a contention that there was no probable cause for petitioner's warrantless arrest.

*See* Report, at p. 13-21.

The Magistrate addressed these contentions finding 1) that Defendant's counsel had no obligation to raise meritless challenges to the admission of Robert Chambliss's testimony; 2) that the decision of how vigorously to cross examine Chambliss was within the professional discretion of Defendant's counsel; and 3) the lack of probable cause claim was meritless, and therefore, Defendant's counsel was not ineffective in choosing to forego a Fourth Amendment challenge. *Id.*

With regard to his first claim of ineffective assistance of counsel, Petitioner has no specific objections to the Magistrates findings or recommendation aside from a mere restatement of his position that Chambliss's testimony should not have been allowed and defense counsel should have objected to its admission. As explained by the Magistrate, Petitioner's "largely nonsensical claim is based on a theory that the trial judge who accepted Chambliss' guilty plea violated laws against

12

public bribery in agreeing to reduce Chambliss' sentence, if the district attorney so requested." *See* Report, at p. 16.  The Court finds that this claim is without merit, and is in fact, frivolous such that "[c]ounsel cannot be deficient for failing to press a frivolous point." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

As to his second ineffective assistance of counsel claim, Petitioner objects to the Magistrates report asserting that trial counsel failed to attack Chambliss's credibility by exposing the fact that the witness had pending criminal charges. However, Petitioner also notes that during the trial Chambliss testified that he plead guilty to one count of armed robbery. *See* Objections, at p. 26. Moreover, the record indicates that trial counsel effectively undermined Chambliss's testimony by exposing certain inconsistencies and ulterior motives. *See* Report, at p. 18 (*citing* State Rec., Vol. II of X, transcript of December 18, 2002, pp. 118 51). Thus, this new objection is simply factually incorrect as evidenced by the record Petitioner's own objections.

All other assertions by Petitioner are reiterations of his allegations, which were previously addressed by the Magistrate. That is, the Magistrate noted that it is not the province of the courts to second guess counsel's cross-examination strategy because "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *See* Report, at p. 17 (*quoting Ford v. Cockrell*, 315 F.Supp.2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 Fed App'x 769 (5th Cir. 2005). As the Magistrate found, the Court finds that it would be inappropriate in this case to employ such second guessing given that the record indicates trial counsel   "highlight[ed] inconsistencies and ulterior motivations" of Chambliss's testimony. *See* Report, at p. 18.

13

Petitioner does not address the Magistrate's findings or recommendation with respect to his third claim of ineffective assistance of counsel. The Court finds that the Magistrates reasoning is based on the facts in the record and the relevant law, and thus, finds that Petitioner's third claim of ineffective assistance of counsel is without merit. Accordingly,

**IT IS ORDERED** that Petitioner's Petition brought under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, on this  27th day of March, 2007.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

14